Mark E. Beatty, WSBA 37076
Kurt M. Rylander WSBA 27819
RYLANDER & ASSOCIATES PC
P.O. Box 250
Vancouver, WA 98666
Tel:  (360) 750-9931
Fax:  (360) 397-0473
*beatty@rylanderlaw.com*
*rylander@rylanderlaw.com*

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUNMODO CORPORATION, a Washington corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SOLAR INNOVATIONS, INC., a Pennsylvania corporation,<br><br>Defendant, | **CIVIL ACTION NO. 3:16-cv-_____**<br><br>**COMPLAINT FOR: FALSE PATENT MARKING** |

COMES NOW Plaintiff, SUNMODO CORPORATION ("Sunmodo"), and by this Complaint seeks (1) damages and equitable relief against Defendant SOLAR INNOVATIONS, INC. ("SI") pursuant to 35 U.S.C. § 292, for false patent marking, and alleges as follows:

### PARTIES

1.     Plaintiff Sunmodo is a Washington-registered corporation, with offices at 915 Jefferson Street, Vancouver, Washington.

2.     Defendant SI is a Pennsylvania-registered corporation with offices at 31 Roberts Road, Pine Grove, Pennsylvania.



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

1
2
3

**JURISDICTION AND VENUE**

4      3.      This Court has Federal Question jurisdiction over this action pursuant to 28

5  U.S.C. §§ 1331 and 1338 as an action arising under the laws of the United States, including

6  Title 35 of the United States Code relating to patents.  This action requests, among other

7  things, judgment that Defendant falsely labeled and advertised certain products as "patent

8  pending" and "patented" which were not covered by pending or issued patent claims,

9  violating the False Patent Marking provision of the Patent Act, 35 U.S.C. § 292.

10      4.      Venue and personal jurisdiction are proper in this district pursuant to 28

11  U.S.C. § 1400, 28 U.S.C. § 1391(b) and (c), and, pursuant to FRCP 4, Washington's long

12  arm jurisdictional rules and statutes in that Defendant resides in this district and/or can be

13  found in this district by virtue of its activities, is engaged in substantial and not isolated

14  activities in this district, and engaged in acts in this district and/or injured persons in this

15  district in conjunction with activities carried on within this district by Defendant and/or in

16  the ordinary course of trade of Defendant.

17

18      5.      Plaintiff is informed and believes and on that basis alleges that this Court has

19  personal jurisdiction over Defendant by virtue of Defendant transacting and doing business

20  in this judicial district.  Plaintiff is informed and believes and on that basis alleges that

21  Defendant has sold products in Washington as well as throughout the United States, has

22  advertised and promoted projects in Washington which used Defendant's products,

23  maintains dealer and/or distributor relationships with entities located and/or doing business

24  in Washington, and entered into a license agreement with Plaintiff relating to the falsely

25  marked products.

26
27
28
29



**RYLANDER**
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

### STATEMENT OF RELATED CASES

6.      Plaintiff and Defendant are currently involved in two co-pending lawsuits in the state courts of Pennsylvania, to wit:

a.      Solar Innovations Inc. v. Sunmodo Corp., Case Number 2013-00825 in the Court of Common Pleas of Lebanon, Pennsylvania (hereinafter the "First State Lawsuit"); and,

b.      Solar Innovations Inc. v. Sunmodo Corp., Jun Liu and Clifford Schrock, Case Number 2015-02048 in the Court of Common Pleas of Lebanon, Pennsylvania (hereinafter the "Second State Lawsuit").

### COMMON ALLEGATIONS OF FACT

7.      Plaintiff Sunmodo Corporation ("Sunmodo") since its inception in 2008, has designed, manufactured and sold, among other products, solar racking systems and related services.  Solar racking systems include complex elongated multi-channel rails, clamps, mounting brackets, clips and other parts which are manufactured by extrusion methods. Solar racking systems are used to mount photovoltaic panels and auxiliary equipment, both for mounting to buildings and similar structures as well as ground-based mounting.  Solar racking components can also be used to mount other equipment as well, for example mounting solar hot water panels, snow guards, HVAC and other equipment to roofs and structures.

8.      Mounting solar racking systems and other equipment to metal roofs without compromising the envelope of the metal roofing presents a unique challenge, and has limited the market for roof-mounted solar racking systems for metal-roofed buildings. Preference dictates that the anchoring system, connecting directly to the metal roof sheets



**RYLANDER**
**& ASSOCIATES PC**
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

and to which the rails and/or solar panel mounting clamps are coupled, will not penetrate through the metal roof sheet in order to prevent weather leakage and not cause permanent damage to the metal roof sheeting. An alternative method involves connecting the anchoring system to the vertical metal seams along which the metal roof sheets are overlappingly-coupled together to form a continuous weatherproof roof surface. Such anchors are commonly referred to as "standing seam clamps", or by similar terms, to indicate that they attach by clamping onto the standing metal seams of a metal roof. In addition to not creating unwanted leak paths, the vertical seams provide the most rigid attachment regions without driving anchors through the metal sheeting into the supporting sub-roof structure.

9.     Plaintiff is informed and believes and on that basis alleges that Defendant Solar Innovations, Inc. ("SI"), designs, manufactures and sells architectural glazed glass products, such as windows, doors and sunrooms. Defendant also manufactures and sells a family of standing seam clamps which SI refers to as "Universal Clamps" and/or "Two-Part Universal Clamps", which are the subject of the false patent marking claims.

10.     Since at least June, 2011 Defendant has marked and advertised both the Universal Clamps and the Two Part Universal Clamps variously as patent pending and/or patented, in violation of 35 U.S.C. § 292.

**The '308 Application and the '888 Patent**

11.     On or about May 27, 2011, Gregory Header filed or caused to be filed U.S. Patent Application Serial Number 13/118,308 (the '308 Application). Mr. Header is listed in the '308 Application as the sole inventor. The '308 Application later issued as U.S.



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

Patent 8,528,888 (the '888 Patent). A true and correct copy of U.S. Patent Application Publication 2012/0299203, the '308 Application as-published, is attached hereto as Exhibit 6. A true and correct copy of the '888 Patent, as published, is attached hereto as Exhibit 7.

12.    During the prosecution of the '308 Application, Mr. Header executed an Inventor's Oath or Declaration pursuant to 37 C.F.R. 1.76, which declared, in relevant part, that "I...have reviewed and understand the contents of the above-identified application, including the claims, as amended by any amendment specifically referred to above..."

13.    Plaintiff is informed and believes, and on that basis alleges, that the '308 Application and any patent issuing therefrom were licensed exclusively to Defendant, granting Defendant the sole right to sublicense.

14.    Plaintiff is informed and believes, and on that basis alleges, that Defendant paid, directly or indirectly, the costs of prosecuting the '308 Application.

15.    The '308 Application was originally filed with a single claim, to wit (bold emphasis added):

> "1. A clamping assembly comprising:
>
>     a)   a generally U-shaped clamp body;
>
>     b)   at least one clamping hammer disposed interior of the clamp body, the clamping hammer being hingedly secured to the clamp body along the longitudinal axis of the clamp body;
>
>     c)   at least one adjustment screw extending through the clamp body and adapted to selectively impinge against the clamping hammer so as to cause it to pivot about its axis, the adjustment screw extending transverse to the longitudinal axis of the clamping hammer; and
>
>     d)   **at least one locking screw adapted to selectively impinge against the clamping hammer** to prevent pivoting of the same whereby a standing seam or other structure received within the clamp body may be tightly grasped between the clamp body **and the clamping hammer** under action of the adjustment screw and **then locked into place by the locking screw.**"

16.    Claims 2 through 20 were added to the '308 Application by amendment on



or about December 10, 2011 by preliminary amendment (the "'308 Preliminary Amendment"), which also amended the original claim 1.  Claims 2 through 14 depended from independent Claim 1, and Claims 16 through 20 depended from independent Claim 15.

17.   The '308 Preliminary Amendment amended Claim 1, paragraph d), to recite (bold emphasis added):

> "...d) **at least one locking screw adapted to selectively impinge against the clamping hammer** to prevent pivoting of the same whereby a structure to be clamped that is received within the clamp body may be tightly clamped by **the clamping hammer** under action of the adjustment screw and **locked into place by the locking screw**."

18.   The '308 Application Claim 15 claimed a clamp which recited, in relevant part, the following structure (bold emphasis added):

> "...d) **at least first and second locking screws**, each one of the first and second locking screws extends through a separate one of the pair of side walls **to selectively impinge against one of the clamping jaws where it is hingedly secured to the clamp body** and to prevent pivoting of the same whereby a structure to be clamped that is received within the interior region may be **clamped between the pair of locking jaws** under action of the first and second adjustment screws **and locked into place by the first and second locking screws**."

19.   The "locking screw(s)" recited in Claims 1 and 15 of the '308 Application are described in the Specification, and illustrated in Figure 5 therein, as reference #20, which is a "locking screw" acting against the hinge portion of a rotating hammer.  No other structure or element other than #20 is described as a "locking screw" in the '308 Application.

20.   At all relevant times during the pendency of the '308 Application, each and every claim included at least one such "locking screw" as a recited element of the claim.

21.   No further amendments were made to Claims 1-20 of the '308 Application

**RYLANDER & ASSOCIATES PC**
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

during its prosecution after the Preliminary Amendment of December 10, 2011.

22.     The '308 Application issued on September 10, 2013 as U.S. Patent 8,528,888 (the '888 Patent), including Claims 1-20 without change.  *See Exhibits 6 and 7.*

23.     In the Notice of Allowance for the '308 Application, a true and correct copy of which is attached hereto as Exhibit 11, the USPTO Examiner expressly identified (at paragraph 2) the locking screw as the feature which distinguished the claims over the cited prior art in the Examiner's stated reason for allowance:

> "2.   The following is an examiner's statement of reasons for allowance: The specific limitations of "at least one locking screw adapted to selectively impinge against the clamping hammer to prevent pivoting" are not anticipated or made obvious by the prior art of record in the examiner's opinion.  For example, US 2005/0257434 shows a hinged clamping hammer within a generally U-shaped body, but there is no locking mechanism as claimed."

**The '062 Application and the '928 Patent**

24.     On or about November 26, 2013, Gregory Header filed or caused to be filed U.S. Patent Application Serial Number 14/091,062 (the '062 Application).  Mr. Header is listed in the '062 Application as the sole inventor.  The '062 Application later issued as U.S. Patent 8,910,928 (the '928 Patent).  A true and correct copy of U.S. Patent Application Publication 2014/0086680-A1, the '062 Application as-published, is attached hereto as Exhibit 8.  A true and correct copy of the '928 Patent, as published, is attached hereto as Exhibit 9.

25.     During the prosecution of the '062 Application, Mr. Header executed an Inventor's Oath or Declaration pursuant to 37 C.F.R. 1.76, which declared, in relevant part, that "I...have reviewed and understand the contents of the above-identified application, including the claims, as amended by any amendment specifically referred to above..."

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

26.     Plaintiff is informed and believes, and on that basis alleges, that the '062 Application and any patent issuing therefrom were licensed exclusively to Defendant.

27.     Plaintiff is informed and believes, and on that basis alleges, that Defendant paid, directly or indirectly, the costs of prosecuting the '062 Application.

28.     The '062 Application claimed priority to the '308 Application as a continuation-in-part of application PCT/US2012/039283, which the '062 Application's Application Data Sheet identified as a continuation of the '308 Application.  Therefore, the '062 Application is treated as a continuation-in-part of the '308 Application.

29.     The '062 Application was originally filed with a single Claim 1, to wit (bold emphasis added):

> 1.     A clamping assembly comprising:
>
> a) a clamp body, the clamp body comprising first and second clamp portions the first and second clamp portions are adjustably interconnected to form a generally U-shaped clamp body of variable width;
>
> b) at least one clamping hammer disposed interior of the clamp body, the clamping hammer being hingedly secured to the clamp body along the longitudinal axis of the clamp body;
>
> c) at least one adjustment screw extending through the clamp body and adapted to selectively impinge against the clamping hammer so as to cause it to pivot about its axis, the adjustment screw extending transverse to the longitudinal axis of the clamping hammer; and
>
> d) **at least one locking screw adapted to selectively impinge against the clamping hammer** to prevent pivoting of the same whereby a standing seam or other structure received within the clamp body may be tightly grasped between the clamp body and **the clamping hammer** under action of the adjustment screw and **then locked into place by the locking screw**.

30.     The original Claim 1 was rejected by the USPTO over prior art.  The '062 Application was subsequently amended on or about April 25, 2014, including amendments to Claim 1 and addition of new Claims 2-30.

31.     New Claims 2 through 20 and 28 through 30 depended from independent



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

Claim 1.  Claim 1, as amended, recited in relevant part (bold emphasis added):

> "...d) **at least one locking screw adapted to selectively impinge against the clamping hammer** to prevent pivoting of the same whereby a standing seam or other structure to be clamped that is received within the clamp body may be tightly clamped by **the clamping hammer** under action of the adjustment screw and **locked into place by the locking screw.**"

32.     New independent Claim 21 recited a clamp having a two-part clamp body, and new Claims 22-27 depended from Claim 21.  Claim 21 reciting (bold emphasis added):

> "21.      A clamping assembly comprising:
>
> a) a clamp body formed by first and second overlapping portions aligned along a common longitudinal axis, the clamp body has a top wall, a pair of side walls and an interior region therebetween;
>
> b) a pair of clamping jaws, the clamping jaws are disposed within the interior region and each jaw of the pair of clamping jaws is hingedly secured to the clamp body and adjacent a separate one of the pair of side walls to restrict pivoting to within the interior region;
>
> c) at least first and second adjustment screws, the first adjustment screw extends through one wall of the pair of side walls to selectively engage against one of the clamping jaws and cause pivoting of the same toward the opposite of the pair of clamping jaws, the second adjustment screw extends through a separate wall of the pair of side walls to selectively engage against a separate one of the clamping jaws and cause pivoting of the same toward the opposite of the pair of clamping jaws, the first and second adjustment screws are transverse to the longitudinal axis of the clamp body; and
>
> d) **at least first and second locking screws**, each one of the first and second locking screws extends through a separate one of the pair of sidewalls **to selectively impinge against one of the clamping jaws where it is hingedly secured to the clamp body** and to prevent pivoting of the same whereby a structure to be clamped that is received within the interior region may be clamped between **the pair of locking jaws** under action of the first and second adjustment screws and **locked into place by the first and second locking screws.**"

33.     The "locking screw(s)" recited in Claims 1 and 21 of the '062 Application are described in the Specification, and illustrated in Figure 5 therein, as reference #20, which is a "locking screw" acting against the hinge portion of a rotating hammer. Reference #178, in Figures 26, 27A, 27B and 29B are also referred to as "locking screws",

**RYLANDER**
**& ASSOCIATES PC**
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

in relation to the illustrated sliding block-style hammers.  No other structure or element other than #20 and #178 is described as a "locking screw" in the '062 Application.

34.     No other amendments to the claims of the '062 Application were entered after the April 25, 2014 amendments.

35.     At all relevant times during the pendency of the '062 Application, each and every claim included at least one "locking screw" as a recited element of the claim.

36.     The '062 Application issued as U.S. Patent 8,910,928 on or about December 16, 2014 (the '928 Patent), with Claims 1 through 30 without change.  *See Exhibits 8 and 9*.


**The '361 Application, Still Pending**

37.     On or about December 10, 2014, Gregory Header filed or caused to be filed U.S. Patent Application Serial Number 14/566,361 (the '361 Application).  Mr. Header is listed in the '361 Application as the sole inventor.  Plaintiff is informed and believes, and on that basis alleges, that the '361 Application is currently pending.  A true and correct copy of U.S. Patent Application Publication 2015/0093190A1, the '361 Application as-published by the USPTO, is attached hereto as Exhibit 10.

38.     Plaintiff is informed and believes, and on that basis alleges, that the '361 Application and any patent issuing therefrom were licensed exclusively to Defendant.

39.     Plaintiff is informed and believes, and on that basis alleges, that Defendant paid, directly or indirectly, the costs of prosecuting the '361 Application.

40.     The '361 Application claimed priority to the '308 Application as a continuation of the '062 Application and thereby as a continuation-in-part of application PCT/US2012/039283, which the '361 Application's Application Data Sheet identified as a


RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

continuation of the '308 Application.    The '361 Application is therefore treated as continuation-in-part of the '308 Application.

41.    The '361 Application was originally filed with an independent Claim 1, an independent Claim 2, and Claims 3-14 depending from Claim 2.  Claim 1 as originally filed was identical to the originally filed Claim 1 of the '308 Application and the originally filed Claim 1 of the '062 Application, including the recitation of "at least one locking screw" in subparagraph "d)".    However, the '361 Application, as filed, included a preliminary amendment cancelling Claim 1.

42.    After subsequent amendments, the USPTO issued a Final Rejection of all pending claims of the '361 Application on or about September 11, 2015.    Header subsequently filed a Request for Continued Examination ("RCE") on or about March 11, 2016, with additional claim amendments.  The USPTO issued a Non-Final Rejection of all claims, as amended in the RCE, on or about April 6, 2016.

**New Matter in the '361 Application**

43.    Although the original Claim 1 of the '361 Application recited "at least one locking screw", Claims 2-14 did not expressly recite a "locking screw".  This was the first claim of any of the '308, '062 or '361 Applications which included a hinged hammer or locking jaw but without the additional element of a "locking screw" acting against the hinge.

44.    The '361 Application lists a filing date of December 10, 2014.  Because the '361 Application claims priority to the '308 Application as a continuation-in-part, incorporating new matter, the new matter in the '361 Application does not share the priority



date of the '308 Application.  The priority date of the new matter in the '361 Application is its filing date, December 10, 2014, or at least not earlier than September 27, 2013 which is the filing date of the '062 Application.

45.    The new matter in the '361 Application includes, among other things, a standing seam clamp having at least one hingedly-connected rotating hammer but no locking screw acting against the hinge.

46.    Defendant's Universal Clamps, which include hingedly-connected hammers but which lack a locking screw acting against the hinge, were publicly disclosed and offered for sale more than one year before the earliest possible priority date of the new matter claimed in the '361 Application.  This public disclosure and offer for sale occurred not later than the April, 2011 PV America tradeshow in Philadelphia, PA.

47.    The '308 Application, to which the '361 Application claims priority as a continuation-in-part, did not disclose a standing seam clamp without at least one hinged hammer and at least one "locking screw".  The new matter disclosed and claimed in the '361 Application  does not relate back to the original filing date of the '308 Application (nor the other applications), so Defendant is barred from obtaining a patent covering the articles.

48.    Plaintiff is informed and believes, and on that basis alleges, that Defendant has failed to disclose to the USPTO that the new matter claimed in the '361 Application was publicly disclosed and/or offered for sale more than one year prior to the priority date.

**Defendant's Products and False Marking**

49.    Defendant sells a line of standing seam clamps, with each type having a



**RYLANDER**
**& ASSOCIATES PC**
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

distinct part number.  Plaintiff is informed and believes, and on that basis alleges, that

Defendant manufactures these articles itself and/or has other parties manufacture some or

all of the component parts according to Defendant's direction and specifications.

50.     Plaintiff is informed and believes, and on that basis alleges, that Defendant

refers to its standing seam clamps having a unitary body structure as "Universal Clamps"

and refers to its standing seam clamps having a two-part body structure as "Two Part

Universal Clamps."

51.     Plaintiff is informed and believes, and on that basis alleges, that Defendant

marks each of its standing seam clamps and/or directs others to mark them with a patent

status.

52.     Plaintiff is informed and believes, and on that basis alleges, that the first

Universal Clamp which Defendant manufactured and publicly offered for sale was part

number SI9401.  The SI9401 clamp was publicly advertised for sale via Defendant's

website, at *www.solarinnovations.com,* at least as early as June 2, 2011.  Attached hereto as

Exhibit 1 is a true and correct copy of a printout of a page from Defendant's website,

received from Defendant in discovery in the First State Lawsuit (Bates Nr. SI73), in which

Defendant states that the SI9401 clamp is "a patent pending design".  Plaintiff is informed

and believes, and on that basis alleges, that the claim of a "patent pending design" in

Exhibit 1 referred to the '308 Application.

53.     On or about June 3, 2011 Defendant published a press release regarding their

Universal Clamp, specifically listing the SI9401 clamp, which expressly stated that the

SI9401 was "patent pending".  Attached hereto as Exhibit 2 is a true and correct copy of

that press release, received from Defendant in discovery in the First State Lawsuit (Bates

**RYLANDER**
**& ASSOCIATES PC**
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

Nr. SI75).

54.     On or about June 30, 2011 Defendant published a blog posting in which it expressly stating that their Universal Clamp was "patent pending", and specifically identifying the SI9401 as "patent pending".  Attached hereto as Exhibit 3 is a true and correct copy of that blog post, received from Defendant in discovery in the First State Lawsuit (Bates Nr. SI76).

55.     The Universal Clamp shown in the images in Exhibits 1-3 do not include a locking screw acting against the hinge of a hammer, and therefore were not covered by a pending claim of the '308 Application.  Plaintiff is informed and believes, and on that basis alleges, that at the time Exhibits 1-3 were published Defendant did not publicly offer for sale a version of the Universal Clamp which included a locking screw, and therefore none of Defendant's Universal Clamp products were covered by a pending claim of the '308 Application.

56.     Plaintiff is informed and believes, and on that basis alleges, that at least as early as 2012 Defendant began marking Universal Clamp articles directly with "PAT. PEND.", and further that none of the articles so marked included a locking screw acting against a hinge of a hammer.

57.     At least as early as June 3, 2013, Defendant began publicly advertising that its Universal Clamp articles were patented, covered by the '888 Patent.  Attached hereto as Exhibit 4 is a true and correct copy of a printout of a page from Defendant's website, cached on or about November 27, 2013 and retrieved via the Internet Archive Wayback Machine at *https://web.archive.org* on October 10, 2016, in which Defendant states that the Universal Clamp is covered by "U.S. Pat. No. 8,528,888".

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

58.     Plaintiff is informed and believes, and on that basis alleges, that none at least the following separate articles, identified by Defendant as "Universal Clamps" and/or "original Universal Clamp" and/or "Universal Clamp...[size]...Standard Body", were marked and/or identified by Defendant as patent pending during some or all of the period May, 2011 through September, 2013:

       a.     SI9401

       b.     SI102

       c.     SI104

       d.     SI105

       e.     SI106

       f.     SI102XS

       g.     SI104XS

       h.     SI105XS

       i.     SI106XS

       j.     SI122

       k.     SI124

       l.     SI125

       m.     SI126

       n.     SI122XS

       o.     SI124XS

       p.     SI125XS

       q.     SI16XS

59.     Plaintiff is informed and believes, and on that basis alleges, that the "patent

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

pending" reference was to the '308 Application.

60.     Defendant's website included at least one photograph of each of the preceding articles which show the words "UNIVERSAL" and "PAT. PEND." marked on the respective articles when they became available for sale during the relevant time period.

61.     Plaintiff is informed and believes, and on that basis alleges, that none of the preceding articles included a locking screw acting against the hinge of a rotating hammer. Therefore, none of the preceding articles was covered by any claim of the '308 Application during the pendency of the '308 Application.

62.     Defendant's current website includes a webpage titled "About Universal Clamps" which expressly states, prominently at the top of the webpage, that the "Universal Clamp" is covered by U.S. Pat. No. 8,528,888.   The webpage contains a brief written description of the purported invention and design features of the "Universal Clamp", and expressly stating that the original Universal Clamp, part number SI9401, is a "patented design".   Attached hereto as Exhibit 12 is a true and correct copy of a printout of that webpage, printed on October 21, 2016.

63.     Plaintiff is informed and believes, and on that basis alleges, that at least the following separate articles, identified by Defendant as "Universal Clamps" and/or "original Universal Clamp" and/or "Universal Clamp...[size]...Standard Body", have been marked and/or identified by Defendant as patented and/or covered by U.S. Patent No. 8,528,888:

      a.   SI9401

      b.   SI102

      c.   SI104

      d.   SI105



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

       e.   SI106

       f.   SI102XS

       g.   SI104XS

       h.   SI105XS

       i.   SI106XS

       j.   SI122

       k.   SI124

       l.   SI125

       m.  SI126

       n.   SI122XS

       o.   SI124XS

       p.   SI125XS

       q.   SI16XS

64. Prior to the issue of the '928 Patent, during the pendency of the '062 Application, Defendant manufactured, offered for sale and sold to the public standing seam clamps in the United States which were marked with the words "Patent Pending" or "Pat. Pend.", or equivalent words, and continue to do so, including at least the following separate articles, identified as "Two Part Universal Clamps":

       a.    SI132L

       b.    SI134L

       c.    SI135L

       d.    SI132S

       e.    SI134S



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

f.     SI135S

g.    SI132LXS

h.    SI134LXS

i.     SI135LXS

j.     SI132SXS

k.    SI134SXS

l.     SI135SXS

65.     Plaintiff is informed and believes, and on that basis alleges, that none of the preceding articles included a locking screw acting against the hinge of a rotating hammer. Therefore, none of the preceding articles was covered by any claim of the '308 Application during the pendency of the '062 Application.

66.     Defendant currently advertises, sells and offers for sale the preceding articles via its public website, which expressly identifies the articles as "patented", and which lists the "Two Part Universal Clamp" as patented under "U.S. Pat. No. 8,910,928 B2".

67.     Defendant's website shows photographs of at least the SI132LXS, SI134LXS, SI135LXS, SI132SXS, SI134SXS and SI135SXS which are permanently stamped with the words "UNIVERSAL CLAMP U.S. PAT. NO. 8910928B2".  Attached hereto as Exhibit 13 is a true and correct copy of a printout of that webpage, printed on October 21, 2016.

68.     Plaintiff is informed and believes, and on that basis alleges, that none of the preceding articles included a locking screw acting against the hinge of a rotating hammer. Therefore, none of the preceding articles was covered by any claim of the '308 Application during the pendency of the '928 Patent.



**Defendant's Knowledge and Intent to Deceive**

69.     Plaintiff is informed and believes, and on that basis alleges, that Defendant falsely marked and advertised its Universal Clamps and Two Part Universal Clamps in order to deceive the public and obtain competitive advantage.

70.     Each of the '308 Application, '062 Application, '361 Application, '888 Patent and '928 Patent list Gregory Header as the sole inventor and application.   On information and belief, Gregory Header is the President of Defendant and has held that title since at least as early as April, 2011.   Therefore, Mr. Header's knowledge of the contents of the preceding patent applications and patents is attributable to Defendant.

71.     Defendant is a sophisticated party with regard to the patent application process, scope and coverage of patent claims, and the requirements for patent and patent pending notices.

72.     Defendant states on the front page of its website at *www.solarinnovations.com*, under a header prominently titled "PATENTED TECHNOLOGY":

### PATENTED TECHNOLOGY

> Solar Innovations has a record 27 different patents either in process or approved. These patented technologies help us reach new heights other manufacturers cannot compete with in NFRC, Design pressure and windload capabilities. Innovations is in our name because it is in our DNA to create new products that will outlast and outperform the competition.

73.     A true and correct copy of a printout of that front page of Defendant's website is attached hereto as Exhibit 14, printed on October 21, 2016.

74.     Plaintiff is informed and believes, and on that basis alleges, that Defendant intentionally uses claims of patent pending and patented products as an integral part of its



marketing to gain competitive advantage in the marketplace and especially to consumers, increase its goodwill, and to warn competitors to not attempt to design, manufacture or sell similar products. Plaintiff has thereby gained a competitive advantage by its assertions of patent protected products and/or methods.

75.     Defendant prosecuted each of the '308, '062 and '316 Applications through a registered patent attorney, and had the benefit of this patent counsel in determining to mark its Universal Clamp and Two Part Universal Clamp products as patent pending and/or patented.

76.     In response to Sunmodo's notice of breach, Defendant filed the First State Lawsuit on or about May 2, 2013 alleging breach of contract against Sunmodo (the "First State Lawsuit").

77.     On or about October 3, 2013 Sunmodo served discovery requests on Solar Innovations in the First State Lawsuit which raised the issue of whether the patent claims cover Defendant's Universal Clamps. For example, Interrogatories 18 and 19, and Solar Innovations' Responses, are provided here, along with relevant definitions in the document, (bold underline added):

> "Definitions...
>
> ...K. The term "Solar Innovations' Standing Seam Clamp" and "Plaintiff's Standing Seam Clamp" includes: (i) apparatus meeting the definition of "Licensed Products" in the License Agreement; (ii) apparatus which read on any claim of U.S. Patent Application Ser. Nr. 13/118,308 (the "'308 Application"); and, (iii) apparatus which read on any claims of any U.S. Patent issuing from the '308 Application....
>
> * * * *
>
> [Interrogatory] 18. List by month all sales of Plaintiffs [Solar Innovations] Standing Seam Clamp by Plaintiff [Solar Innovations], through the present, including at least the following information: part number, part description, number sold, purchaser.



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

1

2

3      RESPONSE: Objection**. No such sales occurred a year or more prior
       to the patent application.** Accordingly, the information sought in this
4      Interrogatory is beyond the scope of permissible discovery (it is not
       admissible evidence, nor is it calculated to lead to the discovery of
5      admissible evidence).

6      [Interrogatory] 19. List all sales of standing seam clamps by Plaintiff
       [Solar Innovations] **which do not read on any claim of the '308
7      Application**.

8      RESPONSE: Objection. This Interrogatory is vague and unclear. It also
       seeks information beyond the scope of permissible discovery. Without
9      waiver, as Plaintiff [Solar Innovations] understands the Interrogatory, **the
       answer is no such sales occurred**.
10

11          78.     Therefore, not later than October, 2013 Solar Innovations was on notice that

12   the coverage of the '308 Application and the '888 Patent vis-à-vis their Universal Clamps

13   was questionable, and they had a duty to investigate.  In response, Solar Innovations stated

14   that "no such sales had occurred" which "do not read on any claim of the '308

15   Application."

16          79.     On or about August 22, 2014 Sunmodo served another set of discovery

17   requests on Solar Innovations in the First State Lawsuit, which again included requests

18   directed to the scope of the '888 Patent claims in relation to Solar Innovation's Universal

19   Clamps.  For example, Interrogatory 30 and Solar Innovations' response are here (Solar

20   Innovations' response to Interrogatory 18 is shown above):
21

22      30. List all sales by Plaintiff [Solar Innovations] during the period March
       22, 2012 through June 30, 2013 of any standing seam clamps which read
23     on any claim of U.S. Patent 8,528,888 (without regard to the fact that the
       patent issued after this time period).
24
       RESPONSE:  See answer to Interrogatory 18. See also answers to all
25     other discovery.

26          80.     Defendant filed a second lawsuit against Sunmodo on or about January 14,

27   2016 alleging, among other claims, that Sunmodo's Patent was derived from Solar

28

29   **21— COMPLAINT FOR RELIEF**
       10/21/2016 3:13:11 PM   SUNM.005

Innovations' trade secrets.

81.     Plaintiff is informed and believes, and on that basis alleges, that the '361 Application filed on or about December 10, 2014 constitutes an express admission that Defendant's Universal Clamp products and Two Part Universal Clamp products are not and were not covered by any claims of the '308 Application, the '888 Patent, the '062 Application or the '928 Patent.

82.     Not later than February, 2015, Sunmodo's representatives expressly notified Greg Header that the Universal Clamps manufactured and sold by Defendant, and the corresponding Universal Clamps which had been manufactured and sold by Sunmodo under the License Agreement, were not covered by the '888 Patent, at least because they did not include a locking screw acting against the hinge of a rotating hammer.

83.     Defendant has persistently and systematically advertised, marked and promoted all versions of its Universal Clamps as "patent pending" and/or "patented" since at least as early as June, 2011.  Plaintiff is informed and believes, and on that basis alleges, that Defendant intentionally emphasized the alleged patent status of their Universal Clamp products as part of their marketing and sales plans in order to obtain a competitive advantage in the marketplace.

84.     Plaintiff is informed and believes, and on that basis alleges, that Defendant is aware that none of the Universal Clamps or Two Part Universal Clamps that it manufactures and sells are covered by any issued patent.


**The License Agreement Between Defendant and Plaintiff**

85.     Sunmodo and Defendant each had booths at the PV America Trade Show in

**RYLANDER**
**& ASSOCIATES PC**
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

April, 2011, which happened to be approximately adjacent to each other.   Sunmodo's employees and Defendants representatives thereby first became acquainted with each other.

86.   At the 2011 PV America Trade Show, Defendant was advertising a standing seam clamp product which corresponds to the original product, marketed and offered for sale by Plaintiff as the "Universal Clamp".  Plaintiff is informed and believes and on that basis alleges that the standing seam clamp displayed by Defendant was the original Universal Clamp version, SI9401.

87.   Following the 2011 PV America Trade Show, Sunmodo communicated back-and-forth with Defendant in an effort to purchase Defendant's standing seam clamps for certain projects and, potentially, to become a distributor for Defendant's product.  By late 2011, it became clear to both Parties that Defendant would not be able to manufacture adequate parts in sufficient quantities to support such a relationship.  Sunmodo considered manufacturing its own version of a similar product, but had been informed by Defendant that Defendant had applied for at least a U.S. patent, such that Sunmodo was concerned about a future patent infringement lawsuit.  At that point, in approximately early November, 2011, the Parties began discussions about a license from Defendant for Sunmodo to manufacture and sell the standing seam clamp products.

88.   In March, 2012, Plaintiff entered into a license agreement with Defendant relating to the Header Patent Applications (the "License Agreement").  The License Agreement defined the term "LICENSED PRODUCT" as "any and all clamps covered by or produced using a process or method encompassed by a claim of the PATENT APPLICATIONS or an IMPROVEMENT thereof.  The License Agreement defined  the "PATENT APPLICATIONS" as the '308 Application, Canadian Patent Application Serial

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

Number 2,761,829 (which was identical in scope to the '308 Application), a China application being prepared for filing (so not identified by a serial number), and a Patent Cooperating Treaty ("PCT") application being prepared (also no serial number), as well as: "...patents that may be issued therefrom, and all divisions, continuations, reissues, substitutes, and extensions thereof."  Attached hereto as Exhibit 5 is a true and correct copy of the License Agreement.

89.    At the time Plaintiff entered the License Agreement, Defendant's Universal Clamp product line included only versions of the unitary body Universal Clamp design, none of which included a locking screw acting against the hinge of a hammer.  At the time, Defendant publicly advertised that these Universal Clamps were "patent pending" and directly marked some or all of their Universal Clamps, without locking screws, as "PAT. PEND."

90.    In addition to the public advertising that their Universal Clamps were "patent pending", and marking of their Universal Clamps with "PAT. PEND.", Defendant represented to Plaintiff that their Universal Clamp products were covered by a pending patent.  During discussions prior to executing the License Agreement, on or about February 13, 2012, Plaintiff requested a copy of the patent application which Defendant asserted covered their Universal Clamp products, because the '308 Application had not been published by the USPTO at the time.  In response, Defendant provided a copy of a portion of the then-pending '308 Application, including at least the Specification, Drawings and Claims 1-20.  The version of Claims 1-20 which was provided by Defendant was identical to the claims which later issued as the '888 Patent.  No other patent applications were provided by Defendant to Plaintiff in response to Plaintiff's request.

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

91.     On or about November 3, 2011, Greg Miller, of Solar Innovations, sent John Quintero, of Sunmodo, an email which presented the initial terms for the license agreement under which Sunmodo could manufacture and sell Universal Clamps, later enumerated in the License Agreement executed in March, 2012.  This was around the time period that Sunmodo and Defendant first began substantive discussions about a possible license agreement (which ultimately culminated in the License Agreement of March, 2012). Greg Header was copied on the email.  In the email, Greg Miller clearly refers to the Universal Clamps as "patent pending" and states that Sunmodo will only be permitted to manufacture the same versions of the licensed "patent pending" Universal Clamps manufactured and sold by Solar Innovations.  In other words, Solar Innovations made clear that Sunmodo's license would not permit Sunmodo to design new products which read on the Licensed Patent [Application], but solely copies of what Solar Innovations manufactured and sold, and that these were viewed by Solar Innovations as "Licensed Products" covered by the "Licensed Patents".

92.     Both parties, Sunmodo and Solar Innovations, discussed the potential license agreement during late-2011 and early-2012 as a way for Sunmodo to ensure an adequate supply of the Universal Clamp products that Solar Innovations was selling and representing as "patent pending".

93.     It was clear to Plaintiff, at the time Plaintiff entered into the License Agreement, that Defendant unequivocally asserted and represented that all of Defendant's Universal Clamps were covered by the pending '308 Application.  Plaintiff also understood that Defendant would aggressively pursue enforcement of its perceived patent rights, which has borne out by subsequent events.  Plaintiff entered into the License Agreement based

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

upon these assertions and representations by Defendant.

94.     Soon after the License Agreement was executed, Sunmodo requested engineering drawings from Defendant, expressly referencing the recently signed License Agreement.   On April 3, 2012, John Quintero of Sunmodo sent Defendant an email requesting drawings, stating in pertinent part: "...As you know we have signed our agreement and need to get tooling and production ready..."

95.     In response to Mr. Quintero's email, and subsequent Sunmodo emails and telephone conversations over the following months (which emphasized to Defendant their lack of timely responses and the ongoing costs to Sunmodo of their slow responses), Defendant provided certain drawings of models of the unitary body Universal Clamp. Defendant did not inform Sunmodo that any of the drawings delivered by Defendant were not for "Licensed Products" as defined in the License Agreement – i.e. that they were not covered by the claims of any of the "Licensed Patents" and therefore not subject to the License Agreement.

96.     During the course of the License Agreement, from March, 2012 through May, 2013, Defendant on multiple occasions directed Sunmodo that it was required to mark the standing seam clamps manufactured by Sunmodo as "patent pending" and/or "PAT. PEND."   Plaintiff is informed and believes, and on that basis alleges, that Defendant was referring to the '308 Application in reference to the "patent pending" marking.  The only standing seam clamps which Sunmodo was permitted by Defendant to manufacture and sell as Licensed Products under the License Agreement, and the only drawings which Defendant provided to Sunmodo for Licensed Products during the License Agreement, were copies of Defendant's Universal Clamp products, all of which lacked a locking screw

acting against the hinge of a hammer.   Sunmodo marked their products as directed by Defendant.

97.     In communications from Defendant to Sunmodo around February-March, 2013, Defendant again expressly stated to Sunmodo that Defendant's Universal Clamps were "patent pending" and that Sunmodo should mark them as such.   Defendant forwarded an email to Sunmodo from "LAWYER", whom Defendant represented was an attorney for Defendant, which also represented that Defendant's Universal Clamp products were "patent pending" and directing Sunmodo to mark its products as such, in order to facilitate later enforcement of the pending patents after issue.

98.     On or about April 12, 2013, Sunmodo sent notice to Defendant that Defendant was in breach of its obligations under the License Agreement, that the essential purpose of the License Agreement had been frustrated, and that therefore Sunmodo intended to terminate the License Agreement and sell off remaining inventory by September 30, 2013.

99.     Although not expressly stated in the notice of breach, Sunmodo also believed at the time that Defendant would not be successful obtaining a patent covering Defendant's Universal Clamp products and the corresponding clamps Sunmodo was manufacturing and selling pursuant to (at least based on Defendant's public and private representations and Sunmodo's good faith understanding) the License Agreement.

100.     Plaintiff is informed and believes, and on that basis alleges, that as of the date of this Complaint, neither Defendant nor Mr. Header, the title owner of the Header Patent Applications and Header Patents exclusively licensed to Defendant, had obtained a patent which covers the Universal Clamps as sold.

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

101.    After termination of the License Agreement, Sunmodo is left with substantial inventory manufactured during the course of the License Agreement that it cannot sell, because Defendant asserts that the inventory products are covered by at least the '888 Patent.  In addition to the value of the inventory itself, Sunmodo has incurred substantial costs in shipping and storing the articles, and advertising and marketing the articles which are falsely marked.

102.    During the course of the License Agreement, Sunmodo has paid at least $22,500 in license fees and/or royalties to Defendant.

103.    Sunmodo has a reasonably-based fear that Defendant and/or Mr. Header, who directs Defendant's business and has exclusively licensed his patents and patent applications to Defendant, will sue Sunmodo for patent infringement if Sunmodo offers for sale or sells the remaining inventory in Sunmodo's possession.  This is despite the fact that none of the articles are covered by any patent issued to Mr. Header or licensed to Defendant.

<u>**CLAIMS FOR RELIEF**</u>

**COUNT 1: FALSELY MARKING PRODUCTS AS "PATENT PENDING" IN VIOLATION OF 35 U.S.C. § 292**

104.    Plaintiff re-alleges every paragraph in this Complaint.

105.    During a period from approximately June, 2011 through at least approximately September, 2013, Defendant manufactured, offered for sale and sold to the public standing seam clamps in the United States which were directly marked with the words "Patent Pending" or "Pat. Pend.", or equivalent words and/or were advertised,



offered for sale and sold via a website which stated that standing seam clamps were covered by one or more pending U.S. patent applications.  Plaintiff is informed and believes, and on that basis alleges, that the pending U.S. patent application referenced by Defendant was U.S. Patent Application 13/118,308, filed May 27, 2011 (the '308 Application).

106.    At least the following separate articles, identified by Defendant as "Universal Clamps" and/or "original Universal Clamp" and/or "Universal Clamp...[size]...Standard Body", were marked and/or identified by Defendant as patent pending under the '308 Application during some or all of the period May, 2011 through September, 2013:

      a.     SI9401

      b.     SI102

      c.     SI104

      d.     SI105

      e.     SI106

      f.     SI102XS

      g.     SI104XS

      h.     SI105XS

      i.     SI106XS

      j.     SI122

      k.     SI124

      l.     SI125

      m.     SI126

      n.     SI122XS



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

o.   SI124XS

p.   SI125XS

q.   SI16XS

107.   Defendant's website included at least one photograph of each of the preceding articles which show the words "UNIVERSAL" and "PAT. PEND." marked on the respective articles when they became available for sale during the relevant time period.

108.   None of the preceding articles was covered by any claim of the '308 Application during the pendency of the '308 Application.

109.   Plaintiff is informed and believes, and on that basis alleges, that Defendant was aware that none of the preceding articles was covered by any claim of the '308 Application at the time that each such preceding article was marked and/or publicly advertised as patent pending.

110.   Defendant's website included at least one photograph of each of the preceding articles which show the words "UNIVERSAL" and "PAT. PEND." marked on the article.

111.   Defendant's website included a webpage titled "About Universal Clamps" which contained a brief written description of the purported invention and design features of the "Universal Clamp" and expressly stated that the "Universal Clamp" was a "patent pending design".

112.   During the entire prosecution of the '308 Application, every claim recited the element of a "locking screw" which acts against the hinge of a rotating hammer.

113.   None of the preceding articles is covered by any claim of the '308 Application.



114.    Plaintiff is informed, and believes, and on that basis alleges, that Defendant was aware that the preceding articles were not covered by any claim of U.S. Patent Application Ser. No. '308 during the pendency of the '308 Application, and during which time Defendant advertised, sold, offered for sale their "Universal Clamps", marked as "Pat. Pend.", and advertised as "U.S. Patent Pending" and/or similar terms.

115.    Plaintiff is informed and believes, and on that basis alleges, that Defendant falsely marked and/or advertised the preceding articles as "patent pending" with intent to deceive the public and competitors, and to obtain competitive advantage.

116.    Plaintiff is entitled to compensation to the extent possible in damages, general and special, consequential, and incidental, in an amount to be proven at trial, for the harm caused by Defendant's unlawful conduct, and for attorneys' fees, costs, and pre- and post-judgment interest.

117.    Plaintiff has and will suffer irreparable damage and ongoing harm to its business, reputation, and goodwill by reasons of Defendant's unlawful acts unless Defendant is restrained and enjoined, and Plaintiff is without adequate remedy at law.

118.    Accordingly, Plaintiff demands an amount of money damages to compensate Plaintiff for the harm caused, including but not limited to Defendant's profits, statutory and/or punitive damages, as well as equitable relief, attorneys' fees, costs, and interest.


**COUNT 2: FALSELY MARKING PRODUCTS AS COVERED BY**

**U.S. PATENT 8,528,888 IN VIOLATION OF 35 U.S.C. § 292**

119.    Plaintiff re-alleges every paragraph in this Complaint.

120.    From approximately September, 2013 and continuing through the present,



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

1
2
3
Defendant manufactured, offered for sale and sold to the public standing seam clamps in

the United States which were directly marked with the words "U.S. PATENT" or

equivalent words and/or were advertised, offered for sale and sold via a website which

expressly stated that standing seam clamps were covered by U.S. Patent No. 8,528,888.

121.    At least the following separate articles, identified by Defendant as

"Universal    Clamps"    and/or    "original    Universal    Clamp"    and/or    "Universal

Clamp...[size]...Standard  Body",  were  marked  and/or  identified  by  Defendant  patented

and/or covered by U.S. Patent No. 8,528,888:

    a.    SI9401

    b.    SI102

    c.    SI104

    d.    SI105

    e.    SI106

    f.    SI102XS

    g.    SI104XS

    h.    SI105XS

    i.    SI106XS

    j.    SI122

    k.    SI124

    l.    SI125

    m.    SI126

    n.    SI122XS

    o.    SI124XS



**RYLANDER**
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

p.   SI125XS

q.   SI16XS

122.   Defendant's website included at least one photograph of each of the preceding articles which show the words "UNIVERSAL" and "PAT. PEND." marked on the respective articles when they became available for sale during the relevant time period.

123.   None of the preceding articles was covered by any claim of the '308 Application during the pendency of the '308 Application, and which issued as the '888 Patent on or about September 10, 2013.

124.   Defendant's website includes a webpage titled "About Universal Clamps" which expressly states, prominently at the top of the webpage, that the "Universal Clamp" is covered by U.S. Pat. No. 8,528,888.  The webpage contains a brief written description of the purported invention and design features of the "Universal Clamp", and expressly stating that the original Universal Clamp, part number SI9401, is a "patented design".

125.   Every claim of U.S. Patent No. 8,528,888 recites the element of a "locking screw" which acts against the hinge of a rotating hammer.

126.   None of the preceding articles is covered by any claim of U.S. Patent No. 8,528,888, at least because each of the preceding articles lacks a locking screw acting against the hinge of a rotating hammer.

127.   Plaintiff is informed and believes, and on that basis alleges, that Defendant was aware that the preceding articles were not covered by U.S. Patent No. 8,528,888 at the time that Plaintiff placed the "U.S. Patent No. 8,528,888 B2" notice on its website.

128.   Plaintiff is informed and believes, and on that basis alleges, that Defendant was aware that none of the preceding articles was covered by any claim of the '888 Patent



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

at the time that each such preceding article was marked and/or publicly advertised as patented.

129.    Defendant was expressly notified that their "Universal Clamps" are not covered by any claim of U.S. Patent No. 8,528,888, not later than February, 2015, at least because they lack the recited feature of a "locking screw" acting against the hinge of a rotating hammer.

130.    Plaintiff is informed and believes, and on that basis alleges, that Defendant falsely marked and/or advertised the preceding articles as covered by the '888 Patent with intent to deceive the public and competitors, and to obtain a competitive advantage.

131.    Plaintiff is entitled to compensation to the extent possible in damages, general and special, consequential, and incidental, in an amount to be proven at trial, for the harm caused by Defendant's unlawful conduct, and for attorneys' fees, costs, and pre- and post-judgment interest.

132.    Plaintiff has and will suffer irreparable damage and ongoing harm to its business, reputation, and goodwill by reasons of Defendant's unlawful acts unless Defendant is restrained and enjoined, and Plaintiff is without adequate remedy at law.

133.    Accordingly, Plaintiff demands an amount of money damages to compensate Plaintiff for the harm caused, including but not limited to Defendant's profits, statutory and/or punitive damages, as well as equitable relief, attorneys' fees, costs, and interest.

## COUNT 3: FALSELY MARKING PRODUCTS AS COVERED BY
## U.S. PATENT 8,910,928 IN VIOLATION OF 35 U.S.C. § 292

134.    Plaintiff re-alleges every paragraph in this Complaint.



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

135.   Defendant manufactured, offered for sale and sold to the public standing seam clamps in the United States which were marked with the words "Patent Pending" or "Pat. Pend.", or equivalent words, and continue to do so, including at least the following separate articles, identified as "Universal Clamps" and/or "Two Part Universal Clamps" and/or "2-Piece Universal Clamps":

      a.     SI132L

      b.     SI134L

      c.     SI135L

      d.     SI132S

      e.     SI134S

      f.     SI135S

      g.     SI132LXS

      h.     SI134LXS

      i.     SI135LXS

      j.     SI132SXS

      k.     SI134SXS

      l.     SI135SXS

136.   Defendant advertises, sells and offers for sale the preceding articles via its public website, which expressly identifies the articles as "patented", and which lists the "Two Part Universal Clamp" as patented under "U.S. Pat. No. 8,910,928 B2".

137.   Defendant's website shows photographs of at least the SI132LXS, SI134LXS, SI135LXS, SI132SXS, SI134SXS and SI135SXS which are permanently stamped with the words "UNIVERSAL CLAMP U.S. PAT. NO. 8910928B2".

RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

138.    Every claim of U.S. Patent No. 8,910,928 recites the element of a "locking screw" which acts against the hinge of a hinged hammer or clamping jaw.

139.    The preceding articles are not covered by any claim of U.S. Patent 8,910,928, at least because they lack the recited feature of a "locking screw" acting against the hinge of a hinged hammer or clamping jaw.

140.    Plaintiff is informed and believes, and on that basis alleges, that Defendant was aware that the preceding articles are not covered by U.S. Patent 8,910,928 at the time Defendant placed the "U.S. Patent No. 8,910,928" notice on its website.

141.    Plaintiff is informed and believes, and on that basis alleges, that Defendant was aware that none of the preceding articles was covered by any claim of U.S. Patent 8,910,928 at the time that each such preceding article was marked and/or publicly advertised as patented.

142.    Defendant was expressly notified that their "Universal Clamps" are not covered by any claim of U.S. Patent 8,910,928, not later than March, 2014, at least because they lack the recited feature of a "locking screw".

143.    Plaintiff is informed and believes, and on that basis alleges, that Defendant falsely marked and/or advertised the preceding articles as covered by U.S. Patent 8,910,928 with intent to deceive the public and competitors, and to obtain a competitive advantage.

144.    Plaintiff is entitled to compensation to the extent possible in damages, general and special, consequential, and incidental, in an amount to be proven at trial, for the harm caused by Defendant's unlawful conduct, and for attorneys' fees, costs, and pre- and post-judgment interest.

145.    Plaintiff has and will suffer irreparable damage and ongoing harm to its



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

business, reputation, and goodwill by reasons of Defendant's unlawful acts unless Defendant is restrained and enjoined, and Plaintiff is without adequate remedy at law.

146.   Accordingly, Plaintiff demands an amount of money damages to compensate Plaintiff for the harm caused, including but not limited to Defendant's profits, punitive damages, as well as equitable relief, attorneys' fees, costs, and interest.

## **DEMAND FOR JUDGMENT & PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for judgment against the Defendant Solar Innovations, Inc., as follows:

(a)   Declaring that Defendant has falsely marked and advertised its products as patent pending, in violation of 35 U.S.C. § 292;

(b)   Declaring that Defendant has falsely marked and advertised its products as patented, in violation of 35 U.S.C. § 292;

(c)   Awarding Plaintiff damages, including direct and indirect damages, general and special, consequential, and incidental damages, in an amount to be determined at trial;

(d)   Ordering Defendant to remove all false and misleading patent-related markings from its products, or destroy the products if removal is not possible;

(e)   Ordering Defendant to remove all false and misleading patent-related statements and claims from its websites, publications, advertising and marketing literature, packaging, social media sites, and any other relevant sources;

(f)   Ordering Defendant to undertake corrective advertising and notifications to the industry and public, and third party publishers, via the world wide web, print and/or trade shows and other relevant events, sufficient to correct the deception Defendant has perpetrated on the public and the industry;



**RYLANDER & ASSOCIATES PC**
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com

1

2

3      (g)      Finding this to be an exceptional case and declaring Plaintiff the prevailing

4  party pursuant to 35 U.S.C. § 285;

5      (h)      Awarding Plaintiff its reasonable attorney fees, expenditures and costs;

6      (i)      Such other and further relief as the Court deems just and proper.

7

8

9      DATED ____October 21, 2016____      /Mark E. Beatty/_____
                                           Mark E. Beatty, WSBA 37076
10                                         Kurt M. Rylander, WSBA 27819
                                           RYLANDER & ASSOCIATES PC
11                                         P.O. Box 250
                                           Vancouver, WA 98666
12                                         Tel:  (360) 750-9931
                                           Fax:  (360) 397-0473
13                                         *rylander@rylanderlaw.com*
                                           *beatty@rylanderlaw.com*
14

15                                         *Attorneys for Plaintiff Sunmodo Corporation*

16

17

18

19

20

21

22

23

24

25

26

27

28

29

**38— COMPLAINT FOR RELIEF**
   10/21/2016 3:13:11 PM   SUNM.005



RYLANDER
& ASSOCIATES PC
PO Box 250
Vancouver, WA 98666
(360) 750-9931 www.RylanderLaw.com